José María Solís Martinó, demandante y apelante, *v.*
Manuel Castro Oriazabala, demandado y apelado.

No. 3978.—*Visto:* Noviembre 19, 1926. *Resuelto:* Diciembre 23, 1926.

Injunction—Materias Objeto de Protección y Remedio—Bienes, Traspasos y Graváimenes—Injunction para Recobrar la Posesión—Cuestiones a Considerar y Resolver—Posesión Como Cuestión de Hecho.—Dentro del procedimiento sumario de una demanda de *injunction* para recobrar la posesión material de propiedad inmueble, sólo la posesión, como cuestión puramente de hecho, es el verdadero *issue* a decidir.

Sentencia de *Gabriel Castejón*, J. (Humacao), declarando sin lugar la demanda de *injunction,* con costas. *Revocada.*

*Antonio L. López,* abogado del apelante; *Joaquín Vendrell,* abogado del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

La acción interpuesta en este caso es la de *injunction* para recobrar la posesión material de propiedad inmueble siguiendo el procedimiento que regula la Ley No. 43, aprobada en marzo 13, 1913, según fué enmendada por la Ley No. 11, aprobada en noviembre 14, 1917.

El demandante, que es usufructuario de cierto solar que se describe en la demanda, radicado en la ciudad de Caguas y colindante con otro solar que usufructúa el demandado, alega que dicho demandado le ha despojado de la posesión material de una porción de solar que también describe, consistiendo los actos de despojo en haber el demandado levantado una cerca de madera y tela metálica que independizó dicha porción de terreno del resto del solar del demandante, impidiendo a éste el uso del mismo.

El demandado negó este hecho esencial de la demanda y como defensa especial alegó que el demandante mensuró y

deslindó su solar con posterioridad a la fecha de estar en posesión del solar que usufructúa el demandado sin poner en conocimiento de éste el hecho de tal mensura ni habérsele dado oportunidad para presenciarla.

La corte inferior declaró sin lugar la demanda por las razones que se expresan en la opinión emitida, la cual dice así:

"Las partes contendientes en este caso son propietarias de dos fincas rústicas sitas en la ciudad de Caguas, y las cuales se describen en la demanda y en la contestación.

"Ambas fincas colindan entre sí, la del demandado por su fondo y la del demandante por el este que es su izquierda entrando.

"Por la evidencia aportada al juicio han quedado probados los siguientes hechos:

"Que el demandante José Ma. Solís es dueño de una casa terrera de madera techada de zinc, situada en la ciudad de Caguas, marcada con el No. 15, de la calle de Campio Alonso, enclavada en un solar propiedad del municipio y cuyas colindancias se describen.

"Que el demandado Manuel Castro a su vez es dueño de otra casa de altos y bajos fabricada de cemento, ubicada en la calle de Acosta, de Caguas, en solar del municipio de Caguas, marcada con el No. 62.

"Que ambas propiedades son colindantes, la del demandante por su izquierda entrando que es el este y la del demandado por su fondo, existiendo entre ambas una porción de terreno como de tres metros de frente, que colinda por su frente con la calle Campio Alonso; por su fondo con un martillo que forma la casa del demandado Castro; por su derecha, con la casa del demandante Solís y por su izquierda, por el fondo de la casa del demandado Castro.

"Sobre esta porción de terreno el demandado ha levantado una cerca de madera y el demandante alegando tener la posesión de dicho terreno, establece la presente acción de injunction para recobrar la posesión de la cual ha sido privado por los actos del demandado.

"Se ha presentado en este caso por ambas partes prueba documental y testifical así como la de inspección ocular del Juez.

"La contienda pues se reduce a determinar a quién corresponde la posesión del terreno existente entre ambas propiedades.

"Según la prueba del demandante Solís, el solar por él usufructuado tiene una capacidad de once metros cincuenta centímetros (11.50 m.) de frente y el demandado Castro sostiene como exten-

sión del suyo la de diez y siete metros con sesenta centímetros (17.60 m.) de fondo.

"Para probar estos hechos se han presentado por las partes certificaciones del Municipio de Caguas, tendentes a sostener ambas alegaciones.

"Pero al practicar la inspección ocular y tomar sobre el terreno las correspondientes medidas en relación con la superficie de terreno ocupado por ambos litigantes, tomando como punto divisorio la empalizada puesta por el demandado, ya que se alega que con ella se priva al demandante de la posesión en que estaba, nos encontramos con que el demandante ocupa un solar contando hasta la empalizada de nueve metros sesenta centímetros (9.60 m.) y si le añadimos la mitad del callejón que queda al lado contrario o sea la derecha entrando ascendente a 0.40 m. tendríamos un solar de diez metros de frente en su favor, faltándole por tanto para completar su título un metro cincuenta centímetros (1.50 m.).

"En cuanto al demandado, su título arroja una medida, como ya dijimos, de diez y siete metros sesenta centímetros (17.60) de fondo, y según las medidas por nosotros tomadas, siempre hasta la empalizada, él ocupa una extensión de diez y ocho metros veintidós centímetros (18.22 m.) teniendo un exceso de 0.62 m. sobre su título.

"Resumiendo la cuestión de la inspección resulta que al demandante le falta 1.50 m. de su solar y el demandado ha ocupado impropiamente con la empalizada una extensión de 0.62 m., no demostrando en modo alguno los títulos que el demandante tenga derecho a la posesión de la porción de la totalidad del terreno que existe entre ambas propiedades, según se alega.

"En cuanto a los títulos, queremos hacer constar que nos merece más crédito el del demandado que es una certificación de la concesión original del solar a Fabiana Díaz de la cual trae él causa, y en cambio el del demandante lo compone un certificado de ciertas constancias del Municipio ordenando un replanteo de los límites del solar, pero no han venido a nuestra consideración la concesión original ni se ha alegado ni probado el porqué de esta omisión y la razón de haberse hecho un replanteo ni expresarse el título que sirvió de base al mismo.

"En cuanto al hecho de la posesión en sí, nos parece muy dudosa que haya estado solamente en poder del demandante y nos atrevemos asegurar que el terreno en cuestión ha sido usado constantemente por inquilinos de ambos litigantes, especialmente los del demandado Castro, pues la última habitación del martillo que forma

su edificio y es el fondo del terreno en discusión, tiene su entrada principalmente por el sitio objeto de esta contienda.

"Por lo expuesto, entendemos que no habiendo probado el demandante que él tenga derecho únicamente al terreno que existe libre entre ambas propiedades, la demanda se declara sin lugar, con las costas al demandante, por establecerlo así la ley, pero sin honorarios de abogado, teniendo en cuenta que el demandado se ha excedido al poner la empalizada en los límites del solar, de acuerdo con su título."

La lectura de la opinión del juez sentenciador, así como un examen que hemos hecho de la prueba producida por las partes en el juicio, nos lleva a la conclusión de que el procedimiento seguido no se ajustó a la naturaleza especial de los *injunctions* (interdictos) para retener y recobrar la posesión material de propiedad inmueble. No se limitó el debate a esclarecer el simple hecho de la posesión sino que fué más allá determinando y adjudicando el derecho a la posesión de la porción del solar en controversia como si se tratara de un juicio ordinario.

El artículo 448 del Código Civil Revisado es una reproducción literal del artículo 446 del Código Civil Español, y es una disposición que independiente del principio que establece de que todo poseedor tiene que ser respetado en su posesión, hace al mismo tiempo referencia al procedimiento civil para hacerlo efectivo. Dicho artículo 448 dice:

"Todo poseedor tiene derecho a ser respetado en su posesión; si fuere inquietado en ella, deberá ser amparado o restituído en dicha posesión por los medios que las leyes de procedimientos establecen."

Aunque pudiera decirse que la declaración que se hace en cuanto al procedimiento a seguir por ser el Código Civil una ley substantiva, es de mera referencia, es importante, sin embargo, saber que los legisladores españoles al redactar el artículo 446 sin duda se referían a los interdictos de retener y recobrar la posesión material, cuyo pro-

cedimiento sumario regulan los artículos 1651 y siguientes de la antigua Ley de Enjuiciamiento Civil.

En el mismo orden de ideas esta Corte Suprema en el caso de *Mattei v. Badillo,* 21 D.P.R. 171, penetrando en la intención de la Legislatura de Puerto Rico, se expresa así:

"Antes de publicarse el vigente Código de Enjuiciamiento Civil, la antigua ley procesal tenía establecido el interdicto para recobrar la posesión en casos como el presente, y por si este procedimiento se entendía derogado por el nuevo Código de Enjuiciamiento Civil, quiso la legislatura restablecerlo en cierto modo por la Ley No. 43 de que dejamos hecho mérito."

Manresa al comentar el artículo 446, *supra,* del Código Civil antiguo, en relación con los interdictos de retener y recobrar, define la naturaleza de éstos, diciendo:

"Los interdictos, siguiendo la definición que de ellos dan los autores de procedimientos, son unos *juicios sumarísimos,* que tienen por objeto el decidir *interinamente* sobre el *hecho* de la posesión sin perjuicio del derecho de los interesados, o suspender o evitar un hecho que nos perjudica. Reciben también ese nombre las *acciones* concedidas al poseedor para obtener ese mismo resultado.

"Por su propio carácter, las resoluciones en ellas recaídas no deciden nada en definitiva, y son siempre sin perjuicio de tercero de igual o mejor derecho. Después de los interdictos puede siempre seguirse un juicio más amplio, en el que se aleguen, examinen, discutan y resuelvan las cuestiones relativas al derecho. Ni podía ser de otro modo, toda vez que, en lo que a nuestro estudio interesa, la posesión de hecho puede tener a su favor la presunción del derecho a poseer; más tal presunción cede forzosamente ante una prueba en contrario; prueba que, como referente al derecho y no al hecho, no cabe ni prospera dentro de la naturaleza del interdicto." Manresa, Coment. Cód. Civ., tomo 4, págs. 209, 210.

La teoría de la demanda es que el demandado ha despojado al demandante desde un mes antes de la radicación de la demanda, de la posesión material de un pedazo de solar de tres metros de frente por ocho metros treinta centímetros de fondo, estableciendo una cerca que independizó la porción de terreno cercada del resto del solar, impidién-

dole el uso del mismo al demandante. Aunque el demandado negó haber levantado dicha cerca, la corte inferior declaró probado, y así resulta de la evidencia, la existencia de tal acto realizado por el demandado. No se le dió, sin embargo, toda la importancia que ello significaba dentro del procedimiento sumario de una demanda de *injunction* para recobrar la posesión material de propiedad inmueble. No se tuvo en cuenta únicamente la posesión como cuestión puramente de hecho, siendo éste el verdadero *issue* para decidir, y al procedimiento se le dió una mayor amplitud entrándose en el terreno del derecho a la posesión por las partes.

La prueba documental del demandado, así como la mensura que se hizo de los solares en el acto de la inspección ocular con vista de los títulos, tendió más bien a poner en claro el derecho a la porción del terreno cercado como formando uno u otro solar, según los títulos.

La controversia en estos procedimientos sumarios está tan circunscrito al hecho tangible de la posesión, que el *injunction* para retener o recobrar la posesión se puede a veces instituir contra el verdadero dueño. Manresa a este respecto dice:

"Prescindiendo de la ley de Enjuiciamiento civil, tiene derecho a utilizar los interdictos todo poseedor, con arreglo al art. 446; y es poseedor, según el 430, el que tiene la cosa o disfruta el derecho, con o sin la intención de haberlos como suyos.

"No cabe duda, por lo tanto, de que lo mismo el poseedor civil que el poseedor natural, lo mismo el que posee en concepto de dueño que el que posee en concepto de no dueño, pueden ejercitar los interdictos. Los que poseen en nombre de otro, gozan de igual facultad, aunque no por derecho propio, sino representando la personalidad del verdadero poseedor, en cuyo nombre poseen." Manresa, Coment. Cód. Civ., tomo 4, 3a. edición, págs. 210, 211.

Las acciones posesorias (interdictos), dice Laurent, se conceden en razón de una presunción de propiedad. Hay un motivo de orden público; si la perturbación y la violen-

cia se traducen en hechos, la ley no puede permitirlas, aun cuando sean ejercitadas por el que pretende tener derecho sobre la cosa, pues si tiene alguno, debe reclamrlo ante los tribunales.  Scaevola, Comentarios al Código Civil, tomo 8, p. 365.

Repetidas son las decisiones de esta Corte Suprema en las que se sostienen iguales principios, reduciendo el papel de los interdictos a ventilar el simple hecho de la posesión.

"En los procedimientos de *injunction* para recobrar la posesión, al igual que en los casos de desahucio, no puede resolverse un conflicto de título, pues sólo está envuelto el derecho inmediato de posesión." *Ortiz* v. *Silva et al.*, 28 D.P.R. 384.

"El hecho de que el dueño de una finca rústica no se oponga a la práctica de mensura y deslinde de una propiedad colindante con la suya no le priva de su derecho a acudir al remedio de *injunction* que provee la ley de marzo 13, 1913, al objeto de recobrar cualquier porción de terreno de que se le hubiera desposeído sin su consentimiento como consecuencia de la mensura y deslinde, el cual no da ni quita derechos y deja intactas las cuestiones de posesión y propiedad, pues su único fin es aclarar y fijar la división y límites de las fincas, evitar que se confundan o desaparezcan los antiguos linderos y prevenir los pleitos que de tal confusión pudieran originarse." *La O,* v. *Rodríguez,* 28 D.P.R. 636.

En el caso de *Somonte* v. *Mimoso,* 27 D.P.R. 402, se dijo:

"La cuestión de qué constituye la verdadera colindancia no puede propiamente decirse que esté envuelta en el *caso* y no debió haber sido traído al *caso* ni considerada por la corte.  Las circunstancias mencionadas con respecto a las mensuras y su resultado son igualmente impertinentes.  Ni el arrendamiento de la finca colindante al demandado, ni el contenido de los títulos y notas de mensura en su poder, ni la nueva mensura hecha por él, crean derecho alguno para incautarse por medio de fuerza y violencia de ninguna parte de tal finca, de la cual la demandada tenía la posesión real.  La ley de 1913 tiene claramente como fin primordial el impedir que se utilicen esos medios y obligar a que se recurra a las cortes."

La corte inferior, por otra parte, resolviendo una moción para que se reconsiderara la sentencia, llega a la con-

clusión ''de que la perturbación en este caso que alega el demandante por parte del demandado es una perturbación de derecho, ya que el demandado Castro. alega un derecho a llevar a cabo el acto que ha realizado y por tanto es im- procedente el interdicto en tales condiciones, ya que el mismo sólo procede cuando la perturbación es meramente de hecho, arbitraria en sí y sin derecho alguno por parte del perturbador para llevarla a cabo.''

El juez inferior se funda en el comentario que hace Manresa al artículo 446 del Código Civil antiguo diciendo que el principio general de que los interdictos pueden en- tablarse contra toda persona que realice actos de perturba- ción o despojo, aunque sea el mismo dueño, admite una ex- cepción de importancia y es cuando la persona que per- turba o arrebata la posesión obra en virtud de un derecho que le corresponde.

Aparte de que en ninguno de los ejemplos que especi- fica Manresa pueden comprenderse las circunstancias de este caso, nos parece que la excepción se funda en que si bien la mala fe de un poseedor es difícil, si no imposible fijarla *a priori* en los interdictos, no pueden considerarse, sin em- bargo, verdaderos poseedores el tenedor por actos mera- mente tolerados y el tenedor clandestino y el violento. ''Le- galmente entendemos que no pueden utilizar los interdictos de retener y recobrar, al menos contra el poseedor que los tolera o a quien han despojado.'' Manresa, vol. 4, págs. 212, 213. Consecuente con estos principios este autor cita la jurisprudencia sentada por el Tribunal Supremo de Es- paña en la sentencia de 14 de octubre de 1890, de que no pueden prevalecer en juicio ordinario los efectos de un acto restitutorio en favor de personas que no tienen la posesión civil ni material. Scaevola, de igual modo, tratando la misma materia y refiriéndose a la jurisprudencia citada, fija con precisión el carácter sumarísimo de este procedi-

miento de *injunction* y el verdadero alcance de aquella jurisprudencia, expresándose así:

"Es incuestionable que el poseedor de buena fe debe ser amparado en su posesión; ¿alcanzará el beneficio al poseedor de mala fe? Claro es que si constase la existencia de la mala fe, no podría ser amparada la posesión que adoleciese de este vicio; pero la buena o mala fe es cuestión de índole privada, afecta a la conciencia más que a la ley, y es, por tanto, difícil, si no imposible, fijarla *a priori*. Por eso decíamos en el comentario del art. 434 que debiendo surgir de la controversia la depuración de la buena o de la mala fe, en tanto no se abra la discusión jurídica y se defina una situación de hecho para la aplicación del derecho correspondiente, el estado posesorio habrá que reputarlo de buena fe y protegerlo con los medios defensivos que la ley tiene establecidos. Además, la ley presume siempre la buena fe mientras no se pruebe lo contrario.

"Es verdad que existen casos (mencionados en el comentario de los artículos 433 y 434) en los cuales puede presumirse desde luego la mala fe; pero esto no es aplicable al interdicto, al menos en nuestra legislación positiva, porque en aquél sólo se discute el hecho de la posesión, sin dilucidar nada acerca de la cualidad con que se posee. El art. 1652 de la ley procesal civil exige información sólo sobre el hecho de hallarse en la posesión o en la tenencia de la cosa, y el de haber sido inquietado o perturbado en ella o temer serlo. Probando estos particulares, la ley otorga su protección, sin entrar a examinar el título de la posesión, para lo cual reserva el procedimiento amplio del juicio ordinario.

"Dos sentencias del Tribunal Supremo parecen desmentir nuestra afirmación, por cuyo motivo conviene estudiarlas.

"Es una la de 10 de Junio de 1885, según la cual, al tenedor precario y de mera tolerancia no le es lícito proponer interdicto de despojo en nombre propio, para lo cual carece de derecho,' refiriéndose al caso en que una persona disfrutaba una parte de una finca por pura condescendencia del propietario. Es la otra la de 15 de Octubre de 1890, declarativa de que 'la posesión y la tenencia derecha no se ganan por fuerza, ni por hurto, ni por precario, pues sólo puede ser amparado en ellas quien las haya por título y buena fe y por tiempo de año y día, a tenor de la ley 3a., título VIII, libro XI, de la Novísima Recopilación, y cuando no concurran estos elementos, puede el dueño cobrar la posesión, según dispone la ley 10 del título XXX de la Partida 3a.'

"Refiérese la sentencia al siguiente hecho. El criado del pro-

pietario de un fundo labraba este último en su cualidad de tal criado. Alegando hallarse en posesión de la finca, formalizó interdicto contra su dueño. Prosperó el interdicto, e interpuesto el juicio ordinario, el Tribunal Supremo pronunció la sentencia, uno de cuyos considerandos hemos transcrito.

"Agrádanos la doctrina de las sentencias expuestas; nos parece muy acomodadas a los principios rigurosos de justicia, pero entendemos que no cercenan ni destruyen la materia de la protección posesoria, o sea de los interdictos. Que el poseedor de mala fe no es poseedor, y no debe ni puede adquirir la posesión, conformes estamos con ello; mas lo que decimos es que la protección posesoria, condensada en el interdicto, no admite la discusión acerca de la buena o mala fe del poseedor, porque en este caso estaría de más el juicio ordinario. Demuéstranlo las mismas dos sentencias citadas; donde se probó la mala fe de los poseedores, o mejor dicho, de los tenedores de las fincas, objeto del interdicto, no fué en este procedimiento sumarísimo, sino en el juicio plenario que le subsiguió, autorizado por el art. 1,658 de la ley de Enjuiciamiento Civil.

"En el interdicto sólo se permite discutir sobre el *hecho* de la posesión, no sobre el *derecho* a la misma, que es lo que implica el fondo de las decisiones del Tribunal Supremo expuestas. Si se tolerase contender respecto del título de la posesión, tocante al derecho con que el tenedor posee la finca, perdería su naturaleza el interdicto y estaría de más en la ley éste o el juicio ordinario para discutir ampliamente la posesión y la propiedad, debiendo fundirse en un solo juicio." Scaevola, Coment. Cód. Civ., tomo 8, págs. 373–375.

Scaevola también relaciona con el artículo 446 el artículo 1560, equivalente este último al 1463 de nuestro Código Civil Revisado, y en la página 377 del mismo tomo sigue diciendo:

"No puede existir perturbación cuando, a la inversa, el particular o la Administración obran en virtud de un derecho qué les corresponde. Esta idea que, con relación al arrendamiento, expone el art. 1,560 del Código, es exacta y conviene generalizarla a todos aquellos casos donde existe igual razón.

"Así, por ejemplo, si el dueño desahucia al arrendatario en uso

de su derecho, es evidente que no comete acto alguno de perturbación.''

La corte inferior cita además como aplicables la jurisprudencia sentada en los casos de *Mártínez* v. *Soto,* 32 D. P.R. 607, y *Municipio de Comerío* v. *Rivera,* 34 D.P.R. 410. Estos casos, sin embargo, no tienen aplicación alguna al presente, pues fueron establecidos y resueltos bajo la ley para definir *"injunctions",* etc., aprobada en marzo 8, 1906. En el caso de Martínez, *supra,* si el *derecho* del peticionario hubiera sido claro, su petición hubiese prosperado, pero en los *injunctions* para retener y recobrar la posesión lo que se dilucida es simplemente una cuestión de hecho y no de derecho y su esfera de acción está bien limitada.

Debemos considerar la última conclusión del juez inferior en cuanto al hecho de la posesión en sí, en la que dice ser muy dudoso que haya estado solamente en poder del demandante, afirmando que el terreno en cuestión ha sido usado constantemente por inquilinos de ambos litigantes.

La corte, sin embargo, declaró probado asimismo que el demandado cercó la porción de solar que se discute, hecho negado rotundamente por dicho demandado en su contestación y admitido de una manera evasiva en su testimonio, y que el demandado ha ocupado impropiamente con la empalizada una extensión de 0.62 m., como demuestra la opinión de la corte al eximir al demandante del pago de honorarios de abogado. Pero de todos modos, aunque se admitiera que inquilinos de ambas partes contendientes usaran del terreno que ha cercado el demandado, razón de más para que la corte sostuviera la situación de hecho existente, cuando por otro lado el demandante también declaró que si los inquilinos del demandado tal hacían era por su mera tolerancia.

*Por todo lo expuesto debe revocarse la sentencia apelada y dictarse otra declarando con lugar la demanda, sin especial condenación de costas.*